# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MARTIN-LANDERS LLC D/B/A MARK MARTIN FORD AND MARTIN-LANDERS IMPORTS LLC D/B/A MARK MARTIN KIA, individually and on behalf of all others similarly situated, | Case No. [_____] |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | |
| CONTINENTAL AKTIENGESELLSCHAFT; CONTINENTAL TIRE THE AMERICAS, LLC; COMPAGNIE GÉNÉRALE DES ÉTABLISSEMENTS; MICHELIN NORTH AMERICA, INC.; NOKIAN TYRES PLC; NOKIAN TYRES INC; NOKIAN TYRES U.S. OPERATIONS LLC; THE GOODYEAR TIRE & RUBBER COMPANY; PIRELLI & C. S.P.A.; PIRELLI TIRE LLC; BRIDGESTONE CORPORATION; and BRIDGESTONE AMERICAS, INC. | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiffs Martin-Landers LLC dba Mark Martin Ford and Martin-Landers Imports LLC dba Mark Martin Kia, individually and on behalf of all others similarly situated, brings this Class Action Complaint for damages and injunctive relief against named Defendants Continental Aktiengesellschaft; Continental Tire the Americas, LLC; Compagnie Générale des Établissements; Michelin North America, Inc.; Nokian Tyres plc; Nokian Tyres Inc; Nokian Tyres U.S. Operations LLC; The Goodyear Tire & Rubber Company; Pirelli & C. S.p.A.; Pirelli Tire LLC; Bridgestone Corporation; Bridgestone Americas, Inc. for violations of Section 1 of the Sherman Act (15 U.S.C. § 1) and violations of various state antitrust laws. All allegations other than those concerning Plaintiffs are based on information and belief.

## I.  **INTRODUCTION**

1.     This action arises from a *per se* unlawful agreement between Defendants—some of the largest tire manufacturers in the United States and the world—to artificially increase and fix the prices of new replacement tires for passenger cars, vans, trucks, buses, and motorcycles ("Tires") sold in the United States. Defendants coordinated price increases, including through public communications.

2.     On January 30, 2024, the European Commission ("EC") announced dawn raids at the premises of "companies active in the tyres industry in several

Member States."[1] The EC justified its dawn raids over suspicion that these companies "violated EU antitrust rules that prohibit cartels and restrictive business practices," specifically that price coordination took place among these companies.[2]

3.     Defendants' unlawful agreement to fix prices of Tires is supported by, among other things: (i) Defendants' sudden and dramatic parallel price increases, which absent a conspiracy to fix prices, ran contrary to their economic interests; (ii) EC dawn raids of Defendants; (iii) the high level of market concentration in the Tires market; (iv) significant barriers to entry; (v) lack of economic substitutes for Tires; (vi) standardization of Tires with a high degree of interchangeability; and (vii) the many opportunities that Defendants' employees had to conspire with one another to fix prices of Tires, coupled with their motivation to achieve an unlawful end.

4.     Plaintiffs seek to represent a Class of individuals and entities that purchased Tires indirectly from Defendants at supra-competitive prices to recover damages, injunctive relief, and other relief as is appropriate, based on Defendants' violation of federal and state antitrust laws. Plaintiffs demand a trial by jury.

---

[1] *Commission carries out unannounced antitrust inspections in the tyres sector*, European Commission (Jan. 30, 2024) (https://ec.europa.eu/commission/presscorner/detail/en/ip_24_561).
[2] Id.

## II.   PARTIES

### A.   PLAINTIFFS

5.     Plaintiff Martin-Landers LLC dba Mark Martin Ford is an Arkansas limited liability company located at 1601 Batesville Blvd., Batesville, AR 72501. Plaintiff Martin-Landers LLC purchased Tires manufactured by one or more of Defendants within the States of Arkansas during the Class Period defined below, and Plaintiff Martin-Landers LLC suffered antitrust injury as a result of the violations alleged in this complaint.

6.     Plaintiff Martin-Landers Imports LLC dba Mark Martin Kia is an Arkansas limited liability company located at 1601 Batesville Blvd., Batesville, AR 72501. Plaintiff Martin-Landers Imports LLC purchased Tires manufactured by one or more of Defendants within the States of Arkansas during the Class Period defined below, and Plaintiff Martin-Landers Imports suffered antitrust injury as a result of the violations alleged in this complaint.

### B.   DEFENDANTS

#### 1.   Continental

7.     **Defendant Continental Aktiengesellschaft** ("Continental AG"), is a German company with its headquarters at Vahrenwalder Strasse 9, 30165 Hannover, Germany. Continental AG is divided into four group sectors: Automotive, Tires,

4

ContiTech, and Contract Manufacturing.[3] The Tires group has five business areas: (i) Original Equipment, (ii) Replacement APAC, (iii) Replacement EMEA, (iv) Replacement the Americas, and (iv) Specialty Tires.[4]

8.      In its 2022 Annual Report, Continental AG reported that its "Tires group sector achieved a particularly positive result, even surpassing expectations with an adjusted EBIT margin of 13.1 percent."[5] In 2022, Continental AG reported sales of €14 billion globally for its tire group.[6] Continental AG's tire group boasts 56,987 employees worldwide.[7]

9.      In the Tires group sector, sales to dealers and end users represent the largest share of the tire-replacement business.[8] For the Tires group sector, economies of scale are important drivers of profitability. For that reason, "manufacturing takes place at major locations in the dominant automotive markets, namely Europe, the U.S., and China."[9]

10.      **Defendant Continental Tire the Americas, LLC** ("Continental U.S.") is a limited liability company incorporated under Ohio law, with its principal place of business at 1830 MacMillian Park Drive, Fort Mill, SC 29707. Continental

---

[3]      Continental Group,      2022      Annual      Report,      at      3 (https://cdn.continental.com/fileadmin/__imported/sites/corporate/_international/english/hubpages/30_20investors/30_20reports/annual_20reports/downloads/continental_annual_report_2022.pdf).
[4] *Id.* at 27.
[5] *Id.* at 4.
[6] *Id.* at 75.
[7] *Id.* at 76.
[8] *Id.* at 26.
[9] *Id.* at 28.

U.S. "manufactures and distributes a complete premium line of passenger, light truck and commercial tires for original equipment and replacement markets."[10] Continental US sells its tires through "independent tire dealers, car dealers, and mass retail companies across North America."[11] Continental U.S. has manufacturing facilities in Barnseville, Georgia (Tire Cord [textile]), Mt. Vernon, Illinois (Passenger/light truck/Commercial truck tires), Sumter, South Carolina (passenger/light truck tires), and Jackson, Missouri (commercial truck tires).[12]

11.     Continental U.S.'s headquarters in Fort Mill, SC is the "operational hub for business in the region and oversees all tire product lines including passenger, light truck, commercial, two wheel and specialty tires."[13] The facility has 500+ employees and includes teams for Engineering & Technology, Sales & Marketing, and "Central Functions."[14]

12.     Continental U.S.'s Sumter Plant is "a tire manufacturing facility [that] produces high-quality, premium lines of passenger and light truck tires for original equipment and replacement markets."[15] It has a "State of the Art manufacturing facility with a growing team of more than 1200 employees."[16]

---

[10]    *Members: Continental Tire the Americas, LLC*, U.S. Tire Manufacturers Ass'n (https://www.ustires.org/continental-tire-americas-llc).
[11]    *Id.*
[12]    Id.
[13]    *Fort Mill, SC*, Continental AG (2024) (https://www.continental.com/en-us/career/our-locations/fort-mill/).
[14]    *Id.*
[15]    *Sumter, SC*, Continental AG (2024) (https://www.continental.com/en-us/career/our-locations/sumter/).
[16]    Id.

### 2. Michelin

13.     **Defendant Compagnie Générale des Établissements** ("CGEM") is organized under the laws of France with its principal place of business at 23 place des Carmes-Déchaux, 63000 Clermont-Ferrand, France. CGEM is the Michelin Group's parent company, which directly or indirectly owns all of its subsidiaries.[17] CGEM's two main subsidiaries are Manufacture Française des Pneumatiques Michelin ("MFPM"), a wholly-owned subsidiary that coordinates all of the Group's manufacturing, sales and research operations in France and Compagnie Financière Michelin ("CFM"), a wholly-owned subsidiary that owns most of the Group's manufacturing, sales and research companies outside of France and coordinates their operations.[18]

14.     **Defendant Michelin North America, Inc**. is a corporation organized under New York law with its principal place of business at One Parkway South, Greenville, SC 29615-5022. Michelin designs, manufactures, and sells tires for every type of vehicle, including airplanes, automobiles, bicycles, earthmovers, farm equipment, heavy-duty trucks, and motorcycles.[19] Michelin is one of the leading manufacturers of tires in the United States. In 2022, Michelin had €10.92 billion in

---

[17] CGEM, 2022 Universal Registration Document at 403 (https://www.michelin.com/en/documents/2022-universal-registration-document/).
[18] Id.
[19] *Members: Michelin*, U.S. Tire Manufacturers Ass'n (https://www.ustires.org/michelin-north-america-inc).

sales North America, 80% of which were generated in the United States.[20] Michelin

employs 23,000 people across 34 plants in the United States and Canada.[21] Michelin

has manufacturing facilities in, among others, Alabama (light trucks and passenger

tires), Indiana (car tires), Oklahoma (passenger tires), and South Carolina (passenger

tires and truck and bus tires).

### 3. Nokian Tyres

15. **Defendant Nokian Tyres plc** is organized under the laws of Finland

with its principal place of business at Pirkkalaistie 7, P.O. Box 20, 37101 Nokia,

Finland. Nokian Tyres plc is the parent company of the Nokian Tyres Group, which

includes subsidiaries worldwide. Nokian Tyres plc develops and manufactures tires

for passenger cars, trucks, and heavy machinery. In 2019, the company's net sales

were $1.8 billion, and it employed some 4,700 people.

16. **Defendant Nokian Tyres Inc.** is a corporation organized under

Delaware law. It is a fully owned subsidiary of Nokian Tyres U.S. Holdings Inc.,

and an indirect subsidiary of Nokian Tyres plc. In December 2018, Nokia Tyres

announced its new headquarters located at 501 Union Street in Nashville, Tennessee,

which would house Nokia Tyres' Vice President along, along with members of the

---

[20] CGEM, 2022 Universal Registration Document at 344 (https://www.michelin.com/en/documents/2022-universal-registration-document/).

[21] *Michelin North America Fact Sheet 2023*, Michelin North America, Inc. (https://michelinmedia.com/site/user/files/1/MNA-Fact-Sheet-2023_2.pdf).

company's sales, customer service, IT, logistics, finance, and marketing teams.[22] In 2017, Nokian Tyres announced it had opened a $360 million manufacturing facility located at 520 Nokian Tyres Dr., Dayton, TN., 37321.[23] The manufacturing facility produces car and light truck all season tires and all-weather tires for consumers in the United States and Canada.

17.    **Defendant Nokian Tyres U.S. Operations LLC** is a limited liability company organized under Tennessee law. It is a fully owned subsidiary of Nokian Tyres U.S. Holdings Inc., and an indirect subsidiary of Nokian Tyres plc.

### 4.    Goodyear

18.    **Defendant The Goodyear Tire & Rubber Company** is a corporation organized under Ohio law with its principal place of business at 200 Innovation Way Akron, Ohio 44316-0001. Goodyear is one of the world's leading tire companies, with one of the most recognizable brand names. It develops, manufactures, markets and distributes tires for most applications and manufactures and markets rubber-related chemicals for various uses. [24] Through its worldwide network of aligned dealers and wholesale distributors and its own retail outlets and commercial truck centers, Goodyear offers its products for sale to consumer and commercial

---

[22] Wes Boiling, *Nokian Tyres Thriving in New Nashville Headquaters*, Nokian Tyres plc (Dec. 12, 2018) (https://www.nokiantires.com/company/news-article/nokian-tyres-thriving-in-new-nashville-headquarters/).
[23] Associate Press, *Nokian Tyres opens $360M tire factory in Tennessee*, The Journal Record (Oct. 3, 2019) (https://journalrecord.com/2019/10/nokian-tyres-opens-360m-tire-factory-in-tennessee/).
[24] The Goodyear Tire & Rubber Co., 2022 Annual Report, 2 (Feb. 14, 2023).

customers, along with repair and other services.[25] Goodyear manufactures its products in 57 facilities in 23 countries and has operations in most regions of the world.[26] Goodyear manufactures and sells under the Goodyear, Cooper, Dunlop, Kelly, Debica, Sava, Fulda, Mastercraft and Roadmaster brands.[27] Approximately 86% of Goodyear's sales in 2022, 85% in 2021 and 84% in 2020 were for tire units.[28] The principal channel for the sale of Goodyear and Cooper brand tires in Americas is a large network of independent dealers. Goodyear, Cooper, Dunlop, Kelly and Mastercraft brand tires are also sold to numerous national and regional retailers, in Goodyear Company-owned stores in the United States, and through the wholesale channel, including through TireHub, LLC, Goodyear's national wholesale tire distributor in the United States, and a network of aligned U.S. regional wholesale tire distributors.[29]

### 5.    Pirelli

19.    **Defendant Pirelli & C. S.p.A.** is organized under the laws of Italy with its principal place of business at Via Bicocca degli Arcimboldi, 3, 20126 Milano MI, Italy. Pirelli designs, manufactures, and distributes tires for cars, motorcycles, and bicycles. Pirelli focuses its business on the high end, premium product segment

---

[25] Id.

[26] *Id.*

[27] The Goodyear Tire & Rubber Co., 2022 Annual Report, 2 (Feb. 14, 2023).

[28] The Goodyear Tire & Rubber Co., 2022 Annual Report (Form 10-K), 2 (Feb. 14, 2023).

[29] *Id.* at 3.

where it is a world leader. Pirelli has a commercial presence in over 160 countries and 19 manufacturing sites in 12 countries.[30]

20. **Defendant Pirelli Tire LLC** is a foreign limited liability company organized under Delaware law with its principal place of business located at 100 Pirelli Drive Rome, GA 30161. Pirelli Tire LLC includes the Modular Integrated Robotized System (MIRS) facility and research and development center at its Rome, Georgia headquarters, a state-of-the-art manufacturing plant in Silao, Mexico, sales and marketing offices in New York City, Los Angeles, Detroit, Montreal and Atlanta, and a prestige flagship store in Los Angeles.[31] The company manufactures, distributes, and markets original equipment and replacement tires for export and domestic car/motorcycle applications.

### 6. Bridgestone

21. **Defendant Bridgestone Corporation** is organized under the laws of Japan with its principal place of business at 1-1, Kyobashi 3-chome, Chuo-ku, Tokyo 104-8340. Bridgestone Corporation is the parent corporation of the Bridgestone Group (the "Group"), which refers to all Group companies, including Bridgestone Americas ("BSAM"), Bridgestone China, Asia Pacific ("BSCAP"), Bridgestone Europe, Russia, Middle East, India, and Africa ("BSEMIA"), and Bridgestone Japan

---

[30] *Members: Pirelli*, U.S. Tire Manufacturers Ass'n (https://www.ustires.org/pirelli-tire-llc).
[31] Id.

("BSJP").[32] Bridgestone Corporation is the world's largest tire and rubber company.[33]

22.     **Defendant Bridgestone Americas, Inc.** ("BSAM") is incorporated under Nevada law with its principal place of business at 200 4th Ave, Suite 100, Nashville, Tennessee, 37201-2256. BSAM and its subsidiaries develop, manufacture, and market a wide range of Bridgestone, Firestone, and associate brand tires to address the needs of a broad range of customers, including consumers, automotive and commercial vehicle original equipment manufacturers, and those in the agricultural, forestry and mining industries.[34] BSAM has U.S. manufacturing facilities in Arkansas, Georgia, Iowa, Illinois, North Carolina, Ohio, South Carolina, Tennessee, and Texas.[35] Defendant BSAM also owns Firestone Tire and Rubber Company, which operates twenty commercial retailers in Michigan and hundreds nationwide.

## III.  AGENTS AND CO-CONSPIRATORS

23.     The anticompetitive and unlawful acts alleged against Defendants in this Complaint were authorized, ordered, or performed by Defendants' officers,

---

[32]     Bridgestone Corp., 2023 Integrated Report, 3 (https://www.bridgestone.com/ir/library/integrated_report/pdf/2023/ir2023_single.pdf).

[33] *Members: Bridgestone Americas, Inc,*, U.S. Tire Manufacturers Ass'n (https://www.ustires.org/bridgestone-americas-inc).

[34] Id.

[35] Id.

agents, employees, or representatives, while engaged in the management, direction, or control of Defendants' businesses or affairs.

24. Each corporate Defendants' agents operated under the authority and apparent authority of its principals.

25. Each corporate Defendant, through its subsidiaries, affiliates, and agents, operated as a single unified entity.

26. Various persons and/or firms not named as Defendants here may have participated as co-conspirators in the violations alleged here and may have performed acts and made statements in furtherance thereof.

27. Each Defendant acted as the principal or agent of, or for, other Defendants with respect to the acts, violations, and common course of conduct alleged herein.

28. When Plaintiffs refer to a corporate family or companies by a single name in their allegations of participation in the conspiracy, it is to be understood that Plaintiffs are alleging that one or more employee or agent of entities within the corporate family engaged in conspiratorial acts or meetings on behalf of all the Defendant companies within that family. Furthermore, if subsidiaries within corporate families distributed the Tire products discussed in this Complaint, these subsidiaries played a significant role in the conspiracy because Defendants wished to ensure that the prices paid for such products would not undercut their pricing

agreements. Thus, all Defendant entities within the corporate families were active, knowing participants in the conspiracy to maintain supracompetitive prices

## IV.   JURISDICTION AND VENUE

29.   The Court also has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332(d), 1337(a), and 1367. The Court has jurisdiction over Plaintiff's claim for injunctive relief under Section 16 of the Clayton Act, 15 U.S.C. § 26.

30.   This Court has personal jurisdiction over Defendants because they purposefully directed their business activity toward this jurisdiction and had substantial contacts with this jurisdiction, and because Plaintiffs' claims for relief arise from and relate to illegal acts committed by Defendants within this jurisdiction.[36]

31.   Venue is proper in this district under 28 U.S.C. §§ 1391(a), (b), (c), and (d), and 15 U.S.C. §§ 15(a) and 22. During the Class Period (defined below), Defendants transacted business in this District, and a substantial portion of the activity at issue here occurred in this District.

32.   Defendants' conduct alleged herein occurred within the flow of interstate commerce, including in this District, and was intended to and did have a direct and substantial effect upon such commerce.

---

[36] In Michigan, Defendant Bridgestone Corporation has over 120 commercial Tire dealer locations in addition to the third-party retailers that stock Bridgestone Tires; Defendants The Goodyear Tire & Rubber Company, Continental Tire the Americas, LLC, Pirelli Tire LLC, Nokian Tires Inc., and Michelin North America Inc. all distribute and sell Tires to and through dozens, if not hundreds, of commercial entities in Michigan.

33.     During the Class Period, Defendants manufactured, sold, and shipped Tires in a continuous and uninterrupted flow of interstate commerce, which included sales of Tires in this District, advertisement of Tires in media in this District, and employment of sales personnel in this District. Defendants' conduct had and continues to have a direct, substantial, and reasonably foreseeable effect on interstate commerce, including commerce within this District.

## V.     FACTUAL ALLEGATIONS

### A.     The Tires Market

34.     Virtually all wheeled land vehicles in operation, whether off-road or on-road, use tires. This dependence makes the tire industry a critical component of the U.S. automobile industry. With nearly 9.2 million passenger and commercial vehicles being produced and almost 14 million vehicles being sold in the United States in 2022, the U.S. market calls for a large number of tires to be manufactured annually.

35.     Given the critical need for tires in all wheeled land vehicles, automobile tire manufacturers have existed in the United States as long as there have been cars. For example, Defendant Goodyear began producing automobile tires in 1899.[37]

36.     U.S. tire manufacturing has an annual economic footprint of $170.6 billion.[38] The United States Tire Manufacturers Association ("USTMA") projects

---

37 Company History, Goodyear Corporate (https://corporate.goodyear.com/us/en/about/history.html).
38 Economy, U.S. Tire Manufacturers Ass'n (https://www.ustires.org/economy).

total U.S. tire shipments of 334.2 million units in 2023, compared to 332.0 million units in 2022 and 332.7 million units in 2019.[39] The market for replacement tires in the United States was sized at approximately $61 billion in 2022.

37.     Manufactured tires can either be used in new cars ("Original Equipment Tires" or "OE" tires) or produced as replacement tires ("Dedicated Replacement Tires"). There are differences between OE tires and Dedicated Replacement Tires. OE tires are specified by the vehicle manufacturer and are initially fitted to the vehicle when new. The car manufacturer works with tire companies to choose a tire that will meet any number of performance requirements for their brand-new vehicle. The manufacturer selects a tire that balances ride noise, handling, longevity, and fuel efficiency to achieve the overall characteristics that the vehicle manufacturer believes is important to the end-user.

38.     By contrast, Dedicated Replacement Tires are selected by individual consumers.

**B.      Tire Prices in the United States increased dramatically after long periods of stable pricing.**

39.     For most of the 2010s, the price level of Tires was stable, changing only by small amounts slowly. Over the last four years, however, the prices of Tires have seen dramatic increases, driven by lock-step prices increases from the major U.S.

---

39 2023 Tire Shipment Outlook, U.S. Tire Manufacturers Ass'n (Feb. 28, 2023) (https://www.ustires.org/2023-tire-shipment-outlook).

Tire manufacturers. For example, statistics provided by the Federal Reserve Economic Data (FRED) show a spike in the producer price index by industry for tire manufacturing (except retreading) for pneumatic tires (which includes passenger, truck, bus, tractor, industrial, and other tires):[40]



This drastic increase in the price index cannot be explained by COVID-19 nor is it a historical trend.

40. The following table summarizes Defendants' price increases on passenger and light truck replacement tires between 2021 and 2023:

### Table 1: Defendants' Prices Increases During the Class Period

| Defendant | Effective Date | Price Increase |
|---|---|---|
| Michelin | February 1, 2021 | Up to 5% |

---

40 Producer Price Index by Industry: Tire Manufacturing, Except Retreading: Pneumatic Tires (Including Passenger, Truck, Bus, Tractor, Industrial, and Other Tires) (PCU3262113262110), U.S. Bureau of Labor Statistics (https://fred.stlouisfed.org/series/PCU3262113262110).

| Defendant | Effective Date | Price Increase |
|---|---|---|
| Continental | March 1, 2021 | Undisclosed |
| Michelin | April 1, 2021 | Up to 8% |
| Goodyear | April 1, 2021 | Up to 8% |
| Pirelli | April 15, 2021 | Up to 7% |
| Bridgestone | May 1, 2021 | Up to 8% |
| Goodyear | June 1, 2021 | Up to 8% |
| Michelin | July 1, 2021 | Up to 6% |
| Continental | July 1, 2021 | Undisclosed |
| Pirelli | July 1, 2021 | Up to 6% |
| Goodyear | September 1, 2021 | Up to 8% |
| Michelin | September 1, 2021 | Up to 14% |
| Continental | October 1, 2021 | Undisclosed |
| Pirelli | October 1, 2021 | Up to 8% |
| Michelin | January 1, 2022 | Up to 12% |
| Goodyear | January 1, 2022 | Up to 12% |
| Continental | January 3, 2022 | Undisclosed |
| Pirelli | January 17, 2022 | Up to 10% |
| Continental | April 1, 2022 | Undisclosed |
| Michelin | April 1, 2022 | Up to 5% |
| Bridgestone | April 1, 2022 | Up to 10% |
| Pirelli | April 11, 2022 | Up to 10% |
| Continental | June 1, 2022 | Undisclosed |
| Michelin | June 1, 2022 | 5-12% |
| Pirelli | June 15, 2022 | Up to 10% |
| Goodyear | July 1, 2022 | Up to 10% |
| Bridgestone | July 1, 2022 | Up to 10% |
| Bridgestone | October 1, 2022 | Up to 9% |
| Michelin | January 1, 2023 | Up to 9% |
| Bridgestone | January 1, 2023 | Undisclosed |
| Pirelli | January 15, 2023 | Up 10% |

41.    Effective February 1, 2021, Michelin increased prices on select

Michelin and BFGoodrich brand passenger and light truck tires, as well as on select

commercial truck tires, up to 5% "due to changing business dynamics of the U.S. market."[41]

42.    Effective March 1, 2021, Continental increased prices on select passenger and light truck tires in the U.S. within the Continental and General brands by an undisclosed amount.[42]

43.    Effective April 1, 2021, Michelin and Goodyear both increased prices on tires. Michelin increased prices on select Michelin, BFGoodrich and Uniroyal passenger and light truck tires up to 8%, citing "changing business dynamics and rising costs of raw materials."[43] Goodyear raised prices of its Goodyear, Dunlop, and Kelly-brand consumer tires by up to 8%.[44]

44.    Effective April 15, 2021, Pirelli increased prices on passenger and light truck tires in the United States up to 7%, citing "higher price of raw materials and changing market conditions.[45]

---

41 Michelin Will Raise Consumer, Commercial Prices on Feb. 1, Modern Tire Dealer (Dec. 19, 2020) (https://www.moderntiredealer.com/topic-category/topics/article/11475158/michelin-will-raise-consumer-commercial-prices-on-feb-1-2020-12-19).
42 Continental Plans Price Hike on PLT Tires, Modern Tire Dealer (Jan. 6, 2021) (https://www.moderntiredealer.com/topics/industry-news/article/11474953/continental-plans-price-hike-on-plt-tires-2021-01-06).
43 Michelin Will Raise Consumer Tire Prices on April 1, Modern Tire Dealer (Mar. 1, 2021) (https://www.moderntiredealer.com/topic-category/topics/article/11473824/michelin-will-raise-consumer-tire-prices-on-april-1-2021-03-01).
44 Goodyear to Increase Consumer Tire Prices, Modern Tire Dealer (Mar. 3, 2021) (https://www.moderntiredealer.com/topics/industry-news/article/11473768/goodyear-to-increase-consumer-tire-prices-2021-03-03).
45 Pirelli Will Raise Prices in U.S. on April 15, Modern Tire Dealer (Mar. 9, 2021) (https://www.moderntiredealer.com/topic-category/topics/article/11473594/pirelli-will-raise-prices-in-us-on-april-15-2021-03-09).

45.     Effective May 1, 2021, Bridgestone increased prices on select Bridgestone and Firestone brand passenger and light truck tires up to 8% in the United States and Canada due to "increased business costs and other market dynamics."[46]

46.     Effective June 1, 2021, Goodyear increased prices on Goodyear, Dunlop, and Kelly consumer tires by up to 8%. Goodyear blamed the increase on "changing market dynamics in the industry and [a] reflect[ion of] the strong value of the Goodyear brands"—using identical wording from its April 1, 2021 price increase.[47]

47.     Effective July 1, 2021, Michelin, Continental, and Pirelli implemented price increases on tires. Michelin increased prices on certain aftermarket Michelin, BFGoodrich, and Uniroyal passenger and light truck tires by up to 6%. Continental increased prices on select Continental and General brand passenger and light truck tires by an undisclosed amount.[48] Pirelli increased prices of passenger and light truck

---

46 Bridgestone to Raise Consumer Tire Prices on May 1, Modern Tire Dealer (Mar. 24, 2021) (https://www.moderntiredealer.com/site-placement/featured-stories/article/11473222/bridgestone-to-raise-consumer-tire-prices-on-may-1-2021-03-24).
47 Goodyear Plans Another Consumer Tire Price Hike, Modern Tire Dealer (May 3, 2021) (https://www.moderntiredealer.com/topics/industry-news/article/11472039/goodyear-plans-another-consumer-tire-price-hike).
48 Continental Will Raise Consumer Tire Prices in July, Modern Tire Dealer (May 5, 2021) (https://www.moderntiredealer.com/topic-category/topics/article/11471940/continental-will-raise-consumer-tire-prices-in-july-1-2021-05-05).

tires by up to 6%, citing higher price of raw materials and changing market conditions.[49]

48.     Effective September 1, 2021, Michelin and Goodyear implemented price increases on consumer tires. Michelin increased prices on certain aftermarket Michelin, BFGoodrich, and Uniroyal passenger and light truck tires by up to 14%.[50] Goodyear increased prices on passenger and light truck tires by up to 8%.[51]

49.     Effective October 1, 2021, Continental and Pirelli increased prices on tires. Continental increased prices on some Continental and General passenger and light truck tires by an undisclosed amount.[52] Pirelli increased prices on car and light truck tires by up to 8%, citing higher prices of raw materials and changing market conditions.[53]

50.     Effective January 1, 2022, Defendant Michelin implemented price increases up to 12% on select Michelin, BFGoodrich, and Uniroyal passenger and

---

49 Pirelli Plans Another Price Hike, Modern Tire Dealer (May 18, 2021) (https://www.moderntiredealer.com/topics/industry-news/article/11471596/pirelli-plans-another-price-hike).
50 Stephen Goodchild, Michelin announces North America price increases, TyrePress (Aug. 3, 2021) (https://www.tyrepress.com/2021/08/michelin-announces-north-america-price-increases/).
51 Goodyear and Cooper Consumer Tire Prices Are Going Up, Ratchet+Wrench (Aug. 10, 2021) (https://www.ratchetandwrench.com/topics/news/article/11463860/goodyear-and-cooper-consumer-tire-prices-are-going-up-modern-tire-dealer).
52 Danielle Hess, Continental Tire Announces Price Increase, Tire Review (Aug. 30, 2021) (https://www.tirereview.com/continental-tire-announces-price-increase/).
53 Pirelli raising prices for fourth time in 2021, Rubber News (Aug. 31, 2021) (https://www.rubbernews.com/tire/pirelli-raising-us-tire-prices-oct-1).

light truck replacement tires.[54] Similarly, Goodyear raised its prices on consumer tires by up to 12%.[55]

51.     Effective January 3, 2022, Continental increased prices on select Continental and General passenger and light truck tires by an undisclosed amount.[56]

52.     Effective January 17, 2022, Pirelli increased its prices for car and light truck tires by up to 10%.[57]

53.     Effective April 1, 2022, Defendant Continental, Michelin, and Bridgestone increased tire prices. Continental increased its price on select Continental and General passenger and light trucks by an amount that varied across specific products by brand.[58] Michelin increased prices by 5% on the majority of select passenger and light truck replacement tires.[59] Bridgestone increased prices by up to 10% on non-winter Bridgestone, Firestone, and Fuzion passenger and light truck replacement tires.[60]

---

54 Michelin Implements Price Increase Across Passnenger Brands and Commercial Offers in North American Market, PR Newswire (Dec. 1, 2021) (https://www.prnewswire.com/news-releases/michelin-implements-price-increase-across-passenger-brands-and-commercial-offers-in-north-american-market-301435108.html).

55 Goodyear to Raise North America tire prices July 1, Tire Business (June 15, 2022) (https://www.tirebusiness.com/news/goodyear-raise-north-america-tire-prices-july-1).

56 Madeleine Winer, Continental Tire Announces Price Increase, Tire Review (Nov. 9, 2021) (https://www.tirereview.com/continental-tire-announces-price-increase-2/).

57 Danielle Hess, Pirelli Announces Price Increases for Car, Light Truck Tires, Tire Review (Jan. 3, 2022) (https://www.tirereview.com/pirelli-price-increases/).

58 Christian Hinton, Continental Tire Announces Price Increase, Tire Review (Mar. 1, 2022) (https://www.tirereview.com/continental-tire-announces-price-increase-3/).

59 Michelin Implements Price Increase Across Passenger Brands and Commerical Offers in North American Market, Michelin North America, Inc. (Mar. 1, 2022) (https://michelinmedia.com/pages/blog/detail/article/c/a1155/).

60 Christian Hinton, Bridgestone Price Increases for Consumer Replacement Tires, Tire Review (Mar. 2, 2022) (https://www.tirereview.com/bridgestone-price-increase-2/).

54.     Effective April 11, 2022, Pirelli increased its prices by up to 10%.[61]

55.     Effective June 1, 2022, Defendants Continental and Michelin each increased prices on tires. Continental increased its prices on Continental- and General-branded passenger and light truck tires by an undisclosed amount.[62] Michelin increased prices on the majority of its passenger and light truck replacement tires ranging from 5-12%.[63]

56.     Effective June 15, 2022, Pirelli increased its prices for car and light truck tires by up to 10%.[64]

57.     Effective July 1, 2022, Goodyear[65] and Bridgestone[66] each increased prices by up to 10% on consumer tires.

58.     Effective October 1, 2022, Bridgestone again increased its prices on Bridgestone, Firestone, and Fuzion passenger and light truck tires by up to 9%.[67]

59.     Effective January 1, 2023, Michelin and Bridgestone each increased their tire prices. Michelin increased prices on select passenger and light trucks tires

---

61 Christian Hinton, Pirelli Increases Price for Car and Light Truck Tires, Tire Review (Mar. 23, 2022) (https://www.tirereview.com/pirelli-increases-price-for-tires/).

62 Conti to raise U.S. tire prices again, Tire Business (Apr. 19, 2022) (https://www.tirebusiness.com/news/conti-raise-us-tire-prices-june-1).

63 Christian Hinton, Michelin to Implement Price Increases, Tire Review (May 11, 2022) (https://www.tirereview.com/michelin-price-increase/).

64 Brian Coote, Pirelli to Increase Prices on U.S. PLT Tires, Tire Review (May 17, 2022) (https://www.tirereview.com/pirelli-increase-prices-plt-tires/).

65 Goodyear to raise North America tire prices July 1, Tire Business (June 15, 2022) (https://www.tirebusiness.com/news/goodyear-raise-north-america-tire-prices-july-1).

66 Brian Coote, Bridgestone to Increase Consumer Tire Prices in U.S., Canada, Tire Review (June 6, 2022) (https://www.tirereview.com/bridgestone-increase-prices/).

67 Christian Hinton, Bridgestone Announces Price Increase up to 15% on Select Tires, Tire Review (Sept. 8, 2022) (https://www.tirereview.com/bridgestone-price-increase-3/).

up to 9%.[68] Bridgestone increased its prices on passenger and light truck replacement tires by an undisclosed amount.[69]

60.     Effective January 15, 2023, Pirelli increased its prices for car and light truck tires by up to 10%.[70]

61.     Between 2021 and 2023, the average price of tires rose 21.4%, a rate of increase more than 70% higher than core inflation.[71] Prices for tires have remained high despite easing inflation and dissipating effects of the COVID-19 pandemic.[72]

62.     And Defendants' price increases are disproportionate to their increased costs during the pandemic. For example, in its Q1 2022 earnings call on May 6, 2022, Goodyear's Chief Financial Officer, Darren Wells, told investors "[Goodyear's] increase in the replacement tire prices more than offset [its] costs."[73]

63.     Sales volume also did not suffer due to price increases, which would normally be seen in a price-competitive market. For example, Continental's sales volume rose by 19.3% in 2022. Their annual report from that year states, "agreements reached with customers on price adjustments and to offset inflation-

68 Samuel Grom, Michelin Introduces Price Increases in Canada, U.S., Tire Review (Dec. 13, 2022) (https://www.tirereview.com/michelin-price-increases/).
69 Samuel Grom, Bridgestone Americas Increased Replacement Tire Prices, Tire Review (Dec. 13, 2022) (https://www.tirereview.com/bridgestone-americas-increased-prices/).
70 Samuel Grom, Pirelli to Increase Prices for Car and Light Truck Tires, Tire Review (Dec. 12, 2022) (https://www.tirereview.com/pirelli-increase-prices-tires/).
71 Michal Grabell, Overinflated: The Journey of a Humble Tire Reveals Why Prices Are Still So High, ProPublica (May 3, 2023) (https://www.propublica.org/article/inflation-tires-rubber-imports-high-prices).
72 Id.
73 The Goodyear Tire & Rubber Company (GT) Q1 2022 Earnings Call Transcript, AlphaStreet (May 6, 2022) (https://news.alphastreet.com/the-goodyear-tire-rubber-company-gt-q1-2022-earnings-call-transcript/).

related effects had a positive impact on the sales performance of the Automotive group sector."[74]

### C.      Defendants' Participation in the Tires Market

64.      Defendants make up some of the largest tire manufacturers in the world. Bridgestone is the world's largest tire and rubber manufacturer,[75] with about 130 manufacturing plants and R&D facilities in 25 countries and sells products in more than 150 countries worldwide. Michelin has nine R&D centers around the world, 123 production sites in 26 countries, a commercial presence in 170 countries and 125,000 employees worldwide, and does business on every continent.[76] Goodyear employs about 72,000 people and manufactures its products in 57 facilities in 23 countries around the world.[77] Pirelli has 18 factories located in 12 countries, production capacity in 2022 of 74 million car tires, and points of sale in over 160 countries (around 20,000 in 2022).[78] Continental employs almost 200,000 people at 519 locations for production, research, and development, and is present in 57

---

[74]      Continental      Group,      2022      Annual      Report,      at      73 (https://cdn.continental.com/fileadmin/__imported/sites/corporate/_international/english/hubpages/30_20invest ors/30_20reports/annual_20reports/downloads/continental_annual_report_2022.pdf).
[75] Bridgestone Corp. (https://www.bridgestone.com/).
[76] A Global Footprint, Michelin (https://www.michelin.com/en/michelin-group/about-us/global-footprint/).
[77] Our Company, Goodyear Corporate (https://corporate.goodyear.com/us/en/about.html).
[78] Pirelli in Brief, Pirelli Corporate (https://corporate.pirelli.com/corporate/en-ww/aboutus/pirelli-in-brief).

countries and markets. It has 917 company-owned tire outlets and a total of around 5,228 franchises and operations with a Continental brand.[79]

65.    The U.S. Tires market is oligopolistic, with three of Defendants controlling nearly all the market: in 2022, Defendants Bridgestone, Michelin, and Goodyear made up almost 64 percent of the entire replacement tire market. Each of the Big Three also encompasses subsidiary brands: (i) Goodyear: Goodyear, Cooper Tires, Dunlop, and Kelly, (ii) Michelin: Michelin, BF Goodrich, and Uniroyal, (iii) Bridgestone: Bridgestone and Firestone.[80] The remaining 35 percent of the market includes manufacturers such as Continental and Nokian



**Figure 2.[81]**

---

79     Continental     Group,     2022     Annual     Report,     at     26 (https://cdn.continental.com/fileadmin/__imported/sites/corporate/_international/english/hubpages/30_20invest ors/30_20reports/annual_20reports/downloads/continental_annual_report_2022.pdf).
80 The 'Goliaths' of the Replacement Tire Industry Are Getting Bigger. How Can The 'Davids' Compete?, TraQline (Feb. 14, 2022) (https://www.traqline.com/newsroom/blog/the-goliaths-of-the-replacement-tire-industry-are-getting-bigger-how-can-the-davids-compete/).
81 Id.

66. This concentration makes the Tires market more susceptible to cartelization—a smaller group of competitors is better able to solve the coordination and trust problems that can prevent cartel formation or destabilize an existing cartel. A smaller number of negotiators makes it easier for the conspirators to agree on a cartel price, to allocate market shares, to conceal their collusion, to develop enforcement mechanisms, and to detect and punish cheaters.

**D.    Factors corroborating Defendants' horizontal price-fixing agreement.**

67. In addition to lock-step price increases, a European Commission investigation, and a consolidated industry susceptible to collusion, Defendants' unlawful agreement to fix prices of Tires is supported by (i) motive and (ii) opportunity, in a market with (iii) high barriers to entry, (iv) price inelasticity, and (iv) interchangeable products. Defendants are also recidivist bad actors.

**1.    Motive**

68. The steadily rising number of total vehicle miles in the United States and the low price of rubber created healthy operating conditions for tire manufacturers leading up to the outbreak of COVID-19. But as measures were put into place to combat the spread of the virus, domestic travel stopped and then slowed, reducing demand for tires. In addition, the supply chain struggled even after the COVID-19 pandemic subsided, causing a lasting effect that increased the costs

related to logistics and raw materials. This caused profit to shrink as revenue dried up while costs of goods sold skyrocketed.

69. Investors took note. For example, in February 2022, Goodyear's stock price dropped 24% in one day.[82] Goodyear's stock dropped again in November 2022, this time by 10%.[83]

70. To remain profitable, Defendants needed to pass on these costs to consumers.

71. By 2023, inflation had eased, and supply chain logistics had recovered, but tire prices remained high, despite excess supply. For example, in November 2023, the President of the union at the Bridgestone Americas Inc. tire plant in Morrison, Tennessee stated that "Even with [] lower production levels, we still have huge amounts of inventory — more than our warehouse can handle. Our warehouse is full of truck and bus tires. In addition, we have 150 to 175 trailers on our plant's property that are completely full of tires."[84]

---

82 Richard Clough, Goodyear Plunges as the Tiremaker Sees Inflation Pressures in 2022, Bloomberg News (Feb. 11, 2022) (https://www.bnnbloomberg.ca/goodyear-plunges-as-the-tiremaker-sees-inflation-pressures-in-2022-1.1722126).
83 Claudia Assis, Goodyear stock drops to lowest level in a month as sales volumes worry Wall Street, MarketWatch (Nov. 1, 2022) (https://www.marketwatch.com/story/goodyear-stock-drops-to-lowest-level-in-a-month-as-sales-volumes-worry-wall-street-11667317266).
84 Joy Kopcha, Do Tire Tiers Exist, and Are They Competitive?, Modern Tire Dealer (Nov. 7, 2023) (https://www.moderntiredealer.com/suppliers/article/33014539/do-tire-tiers-exist-and-are-they-competitive).

72.     In a normal functioning economy, as costs lowered and there was excess supply, prices would lower too, as inflated prices would lead to a loss of market share. Yet prices remain high, as noted above.

### 2.     Opportunity

73.     Defendants had numerous opportunities to meet and conspire under the guise of legitimate business contacts and to perform acts necessary for the operation and furtherance of the conspiracy. At least throughout the Class Period, the Tire industry provided ample opportunities for Defendants and/or their parent companies to collude and fix the prices of Tires, through trade association meetings and public communications.

74.     Each of the Defendants is a member of the U.S. Tire Manufacturers Association ("USTMA"). The USTMA is the national trade association for tire manufacturers that produce tires in the United States.

75.     Senior executives from each of the Defendants currently serve on the Board of Directors of the USTMA.

76.     The USTMA holds a number of annual conferences and meetings where Defendants had the opportunity to meet and discuss pricing. For example, the USTMA holds a spring and fall meeting for its board members annually, including

on July 29, 2020,[85] October 6, 2021,[86] January 25, 2022,[87] October 6, 2022, April 3-4, 2023,[88] and October 11, 2023.[89] Minutes from these regular meetings are not available to the public.

77. Defendants also closely monitored their conspiracy by tracking the other cartel member's pricing and sales information. The monitoring of the pricing and other conduct of coconspirators is a common tactic for price fixing cartels. Revenue management software enables them to use large data sets that include competitor pricing data to maximize revenues.

78. While Defendants may use different software, all revenue management software programs allow Defendants to analyze and filter large data sets of pricing information at a granular level and then develop pricing strategies informed by market trends. The programs also allow for close monitoring of competitors' pricing.

79. One type of revenue management software is sold by Torqata, formerly an analytic division of American Tire Distributors, which was spun off in 2020. Torqata produces revenue management software specific to the tire industry so that

---

85 Henry Willis, USMTA makes changes to its director board, Tire Technology Int'l (Aug. 14, 2020) (https://www.tiretechnologyinternational.com/news/business/ustma-makes-changes-to-its-director-board.html).
86 Kim Kleine, U.S. Tire Manufacturers Ass'n Names Bridgestone's Paolo Ferrari as Board Chair, (Oct. 11, 2021) (https://www.ustires.org/us-tire-manufacturers-association-names-bridgestones-paolo-ferrari-board-chair).
87 USTMA Announces Four New Board Members, Modern Tire Dealer (Jan. 27, 2022) (https://www.moderntiredealer.com/retail/article/11466086/ustma-announces-four-new-board-members).
88 USTMA Board of Directors Holds Spring Meeting in Washington, DC, Admits Giti Tire USA as 12th Member Company, U.S. Tire Manufacturers Ass'n (https://www.ustires.org/ustma-board-directors-holds-spring-meeting-washington-dc-admits-giti-tire-usa-12th-member-company).
89 Michelin CEO Named USTMA Chairman, Modern Tire Dealer (Oct. 12, 2023) (https://www.moderntiredealer.com/suppliers/article/33013078/michelin-ceo-named-ustma-chairman).

manufacturers, distributors, and retailers can use data-driven analytics to quickly respond to market trends and increase revenue. Its Pricing Insights feature allows customers to use an analysis of competitors' private information to maximize revenue.

80.     Lizeo Group's Retail Price Pro software, which is purchased by Defendants Bridestone and Continental, also gives access to granularized pricing data from competitor manufacturers. Customers can set a pricing strategy informed by this pricing data

### 3.     Barriers to Entry

81.     Tire manufacturers face significant entry and exit barriers that lead to market concentration which facilitates collusion. Barriers to entry include large up-front capital investments to establish manufacturing plants that can produce tires at scale. For example, Defendant Nokian recently completed a $360 million manufacturing facility in Dayton, Tennessee.[90] These manufacturing plants need to be close enough to the end consumers to make shipping costs not prohibitive, as tires are heavy products. Manufacturing plants must either have sophisticated and expensive automation or a large and expensive labor force. Established tire manufacturers have also erected significant intellectual property protections through patented products.

---

[90] Nokian Tyres' North American Factory, Nokian Tyres (https://www.nokiantires.com/daytonfactory/).

82.     As to exit barriers, because a huge amount of investment is required to set up a manufacturing plant and to shift to new business, it is extremely difficult to exit from the tire industry. For example, Uniroyal and Goodrich had to merge due to high exit barriers. Thus, consolidation is more likely than companies going out of business.

83.     Because the Tires market has high barriers to entry, it is more conducive to collusion. To maximize long-term profits, the cartel-fixed price must be high enough to warrant participation in a criminal conspiracy but not so high as to lure new competitors into the market. When a market is protected by high barriers to entry, conspirators are better able to fix a high price with less worry that new firms will come into the market and bid the price down. In contrast, firms may not bother to conspire to fix prices if interlopers cannot be excluded from the market.

### 4.     Price inelasticity for Tires makes the market susceptible to collusion.

84.     The price elasticity of demand shows the responsiveness of the quantity demanded of a good relative to a change in its price. When a seller of goods or services can increase selling price without suffering a substantial reduction in demand, pricing is considered inelastic. For example, gasoline has little price elasticity of demand. Drivers will continue to buy as much as they have to, as will airlines, the trucking industry, and nearly every other buyer.

85.     Demand elasticity affects whether price fixing is likely to be profitable. When demand is inelastic, a seller with market power can charge a higher price without losing significant sales. This market characteristic encourages collusion because rivals can collectively raise price profitably.

86.     Tires are highly inelastic because tire replacement is not an option that can be deferred for long, particularly when a tire is damaged. Further, the cost of replacement Tires makes up a fraction of the operating cost of a car.

87.     Furthermore, Tires do not compete with other products in the functional sense; consequently, there is no inter-industry competition through cross-elasticities of demand. Because the demand for Tires derives from the need to use the automobile, buyers cannot be induced to buy more or less of the product in any significant sense through price changes.

88.     Because the price for Tires is highly inelastic, Defendants were able to and did collectively raise prices to supracompetitive levels without losing revenue. For example, Bridgestone America's chief operating officer reported, "We're certainly seeing a red-hot economy that, despite the price increases and inflation, demand still remains quite strong."[91]

---

[91] Rising tires prices affected by several factors, Tire Business (July 8, 2022) (https://www.tirebusiness.com/news/rising-tire-prices-affected-several-factors).

**5.    Tires are standardized products with a high degree of interchangeability.**

89.    Defendants make similar models of Tires for each of the type-categories listed above (all-season, all-terrain, winter/snow, and summer tires). Within each type-category, Tires do not differ significantly in quality, appearance, or use. As a result, Tire models are functionally interchangeable.

90.    When purchasing a new set of four replacement tires, consumers can choose almost any brand on the market. Even when consumers are replacing only some of the four tires, they can use tires from different brands or models so long as certain features, such as tread depth, are similar.[92] Thus, Tire "producers are not likely to be able to deviate much from the competitive price without losing sales."[93]

91.    When products are interchangeable, the primary way to compete is on the basis of price. The avoidance of price-based competition is the primary motivation for forming a cartel. Thus, cartels are more likely when the participants sell interchangeable products. Where a product like a Tire is interchangeable, economics suggests that cartel behavior is facilitated because, among other things, cartel members can more easily monitor and detect defections from a price-fixing agreement.

---

92 Agota Szabo, Should you be mixing tire (brands) on the same vehicle?, Priority Tire (June 17, 2022) (https://www.prioritytire.com/blog/should-you-be-mixing-tire-brands-on-the-same-vehicle/).

93 Subhrendu K. Pattanayak et al., Economic Analysis of the Rubber Tire Manufacturing MACT, 2-13 (Aug. 2000) (https://www.epa.gov/sites/default/files/2020-07/documents/rubber-tire-mfg_ip_08-2000.pdf).

### 6.     Defendants are recidivist violators of antitrust laws.

92.     The U.S. Tire industry for years has been highly concentrated, and there is a history of antitrust violations by Tire manufacturers.

93.     In 2001, the European Commission fined Michelin nearly €20 million "for abusing its dominant position in replacement tyres for heavy vehicles in France during most of the 90s."[94] Michelin was found guilty of the same behavior in the Netherlands in 1981.

94.     In 2008, the South African Competition Authority conducted search and seizure operations at the premises of Bridgestone, Dunlop, and the South African Tyre Manufacturers' Conference ("SATMC").[95] These raids resulted in South African's competition authority issuing fines against Goodyear and Continental, while Bridgestone South Africa (Pty) Ltd. escaped a fine after admitting to taking part in the alleged cartel and receiving conditional immunity after filing a leniency application with the regulator.[96]

---

94 Commission fines Michelin for abusive commercial behaviour, European Commission (June 20, 2001) (https://ec.europa.eu/commission/presscorner/detail/en/IP_01_873).
95 Brian Jennings, Tyresome collusion: tribunal hearing into alleged tyre cartel, IR Global (Mar. 29, 2022) (https://irglobal.com/article/tyresome-collusion-tribunal-hearing-into-alleged-tyre-cartel/).
96 Melissa Lipman, S. Africa Targets Goodyear, Others in Tire Cartel Case, Law360 (Sept. 8, 2010) (https://www.law360.com/articles/192122/s-africa-targets-goodyear-others-in-tire-cartel-case).

95.    In 2019, Defendants Bridgestone and Continental were among the 52 automotive suppliers that paid a total of $23 million in settlements for antitrust law violations brought by the California Attorney General.[97]

### E.    Defendants' Conspiracy

96.    On January 30, 2024, the European Commission said in a press statement that is carrying out inspections at the premises of various tire manufacturing companies in Member States related to suspected anticompetitive practices.

97.    The European Commission stated that it suspects "price coordination took place amongst the inspected companies," constituting a secret cartel to fix the prices of "new replacement t[i]res for passenger cars, vans, trucks and buses."[98]

98.    The European Commission Antitrust Division is running its investigation in partnership with its counterparts from the relevant national competition authorities of the Member States where the inspections were carried out, which would include France, Belgium, Germany, Italy, and Finland.

99.    The six industry giants confirmed that they were under investigation and were cooperating with the various competition authorities.

---

97 Chris Anthony, Tyremakers among 52 automotive suppliers in US$23 million antitrust settlement, TyrePress (Dec. 6, 2019) (https://www.tyrepress.com/2019/12/tyremakers-among-52-automotive-suppliers-in-us23-million-antitrust-settlement/).

98 Commission carries out unannounced antitrust inspections in the tyres sector, European Commission (Jan. 30, 2024) (https://ec.europa.eu/commission/presscorner/detail/en/ip_24_561).

## VI.    TOLLING OF THE STATUTE OF LIMITATIONS

100.    Class member purchases of Tires within four years prior to the filing of this Complaint are not barred by the applicable four-year statutes of limitations; the statutes need not be tolled for these claims to be actionable.

101.    Plaintiffs and the Class did not know and could not have known of Defendants' illegal conduct until the European Commission announced dawn raids in the tire industry on January 30, 2024. Before then, Plaintiffs and the Class had no reason to believe that they paid prices for tires that were affected by Defendants' illegal conduct, and thus had no duty until then to investigate the claims set forth in this Complaint. Defendants' secret price-fixing agreements were inherently self-concealing.

102.    Additionally, Defendants engaged in affirmative acts that were designed to mislead and conceal their illegal conduct. For example, Michelin attributed its 12% price increase on passenger and light truck replacement tires in 2022 to "market dynamics."[99] Goodyear justified its July 1, 2022 price increase on consumer tires to rising raw-materials and other inflation-impacted costs.[100] Pirelli justified its April 11, 2022 price increase to "changing market conditions."[101]

---

99 Michelin Implements Price Increase Across Passenger Brands and Commercial Offers in North American Market, PR Newswire (Dec. 1, 2021) (https://www.prnewswire.com/news-releases/michelin-implements-price-increase-across-passenger-brands-and-commercial-offers-in-north-american-market-301435108.html).
100 Goodyear to raise North America tire prices July 1, Tire Business (June 15, 2022) (https://www.tirebusiness.com/news/goodyear-raise-north-america-tire-prices-july-1).
101 Christian Hinton, Pirelli Increases Price for Car and Light Truck Tires, Tire Review (Mar. 23, 2022) (https://www.tirereview.com/pirelli-increases-price-for-tires/).

103.    Accordingly, if tolling is necessary to advance some or all of the claims alleged by Plaintiffs and the Class, the four-year statutes of limitations governing claims under the Sherman Act were tolled at least until January 30, 2024, under the injury-discovery rule and the doctrine of fraudulent concealment.

## VII.    CLASS ACTION ALLEGATIONS

104.    Pursuant to Federal Rules of Civil Procedure 23(b)(2) and (3), Plaintiffs bring this suit on their behalf and on behalf of two proposed classes of all other similarly situated persons consisting of:

**Nationwide Injunctive Relief Class (All States)**
All persons or entities who indirectly purchased Tires manufactured by any Defendant within a state or territory of the United States of America from January 1, 2020 until the anticompetitive effects of Defendants' unlawful conduct cease (the "Class Period").

**Indirect Purchaser Class**
All residents or citizens of a state or territory of the United States of America whose laws permit an indirect purchaser to pursue a claim for anticompetitive conduct who indirectly purchased Tires manufactured by any Defendant from January 1, 2020 until the anticompetitive effects of Defendants' unlawful conduct cease (the "Class Period").

Excluded from each Class are: (a) the Defendant and its officers, directors, management, employees, subsidiaries or affiliates; (b) any entity in which the Defendant has a controlling interest; (c) any divisions, subsidiaries, and predecessors of the Defendant; (d) all governmental entities; (e) the judges in this case and any members of their immediate families and judicial staff; (f) any juror assigned to this action; (g) all persons who are presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; (h) and all persons who are currently incarcerated.

105.    The Class consists of millions of purchasers residing throughout the United States. Accordingly, it would be impracticable to join all Class Members before the Court.

106.    Plaintiff's claims are typical of the claims of the Class Members, in that they share the facts above and legal claims or questions with the Class Members, there is a sufficient relationship between the damage to Plaintiffs' and Defendants' conduct affecting Class Members, and Plaintiffs have no interests adverse to the interests of other Class Members.

107.    Under Rule 23(b)(3), there are numerous and substantial questions of law or fact common to all the members of the Classes and which predominate over any individual issues. Included within the common question of law or fact are:

a.    The definition of the relevant product markets;

b.    Defendants' market power within the relevant product markets;

c.    Whether Defendants contracted, combined, or conspired with one another to restrain trade of Tires at any time during the Class Period;

d.    Whether Defendants' conduct caused the prices of Tires sold to consumers to be higher than the competitive level as a result of their restraint of trade (supracompetitive prices);

e.    Whether Plaintiffs and the other Class Members were injured by Defendants' conduct;

f.    The quantum of overcharges paid by the Classes in the aggregate; and

g.   and Whether Plaintiffs and Class Members are entitled to, among other things, injunctive relief and the nature and extent of such relief.

108.   Plaintiffs will fairly and adequately protect the interests of Class Members and has retained counsel experienced and competent in the prosecution of complex class actions including complex questions that arise in antitrust litigation.

109.   A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all Class Members is impracticable and no other group method of adjudication of all claims asserted here is more efficient and manageable for at least the following reasons:

a.   The liability claims presented predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

b.   Absent certification of the Class, the Class Members will continue to suffer damage and Defendants' unlawful conduct will continue without remedy while Defendant profits from and enjoys its ill-gotten gains;

c.   Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

d.   When the liability of Defendant has been adjudicated, claims of all Class Members can be administered efficiently and/or determined uniformly by the Court; and

e.   This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiffs and Class Members can seek redress for the harm caused to them by Defendant.

110.    Because Plaintiffs seek relief for the entire Classes, the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant.

111.    Further, bringing individual claims would overburden the courts and be an inefficient method of resolving the dispute, which is the center of this litigation. Adjudications with respect to individual members of the Classes would, as a practical matter, dispose of the interest of other members of the Classes who are not parties to the adjudication and may impair or impede their ability to protect their interests. Consequently, class treatment is a superior method for adjudication of the issues.

## VIII.    <u>CLAIMS FOR RELIEF</u>

### Count I: Violation of Section 1 of the Sherman Act (15 U.S.C. § 1)
### Against all Defendants
### (Declaratory and Equitable Relief)

112.    Plaintiffs incorporate each allegation in the preceding paragraphs of this Complaint.

113.    The relevant market is the Tires market and the relevant geographic market is the United States. Defendants have possessed and continue to hold at least a 65% market share in the Tires market in the United States.

114.   Defendants entered into and engaged in a continuing combination, conspiracy, or agreement to unreasonably restrain trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) by artificially restraining competition with respect to the price of new replacement tires for passenger cars, vans, trucks, buses, and motorcycles sold within the United States for the purpose and effect of raising prices.

115.   Defendants' agreements are transactions in interstate commerce, as are the replacement tires themselves, which are delivered using and themselves constitute, instrumentalities of interstate commerce.

116.   Defendants' agreements are together and individually *per se* violations of Section 1 of the Sherman Act. This is in part because the primary objective of the agreements is to force prices in the new replacement tires market to increase, maintain or stabilize at levels above what would have occurred in a competitive market. In fact, because Defendants achieved that objective, the prices for new replacement tires have increased 21.4% in the last few years.

117.   Defendants are recidivists and continue to assert that their conduct was legitimate. The fact that the conduct alleged may have ceased at some point does not mean that Defendants will not engage in similar types of price-fixing in the future.

118.   Plaintiffs and all others similarly situated have been injured in their business or property because of Defendants' violations of Sections 1 of the Sherman Act within the meaning of Section 4 of the Clayton Antitrust Act, 15 U.S.C. § 15.

119.   Plaintiffs and all others similarly situated are threatened with future injury to their business and property because of Defendants' continuing violation of Section 1 of the Sherman Act within the meaning of Section 16 of the Clayton Antitrust Act, 15 U.S.C. § 26.

120.   Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201(a), Plaintiffs and the Class seek a declaratory judgment that Defendants' conduct in seeking to prevent competition as described in the preceding paragraphs violates Section 1 of the Sherman Act.

121.   Plaintiffs and members of the Class seek and are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

122.   For this conduct, Plaintiffs and members of the Class are entitled to treble damages, injunctive relief, and attorneys' fees and costs under Section 4 of the Clayton Act (15 U.S.C. § 15) and 15 U.S.C. § 26.

## **VIOLATIONS OF STATE ANTITRUST LAWS**

123.   Plaintiffs incorporates each allegation in the preceding paragraphs of this Complaint.

124.   During the Class Period, Defendants entered into contracts, combinations, or conspiracies with one another as alleged above, for the purpose and with the effect of artificially raising prices of replacement Tires.

125.   The contract, combination, or conspiracy consisted of an agreement among Defendants to fix, raise, inflate, stabilize, and/or maintain at artificially supracompetitive prices for Tires, including in the United States.

126.   In formulating and carrying out this conspiracy, Defendants performed acts in furtherance of the combination and conspiracy, including agreeing to fix, increase, inflate, maintain, or stabilize effective prices of Tires purchased by Plaintiffs and members of the Class.

127.   Defendants engaged in the actions described above to carry out their unlawful agreements to fix, increase, maintain, or stabilize prices of Tires. As a direct and proximate result, Plaintiffs and Class Members were deprived of free and open competition and paid more for tires than they otherwise would have without Defendants' unlawful conduct. This injury is of the type the antitrust laws of the states included here were designed to prevent, and this injury flows from what makes Defendants' conduct unlawful.

128.   The following Claims for Relief are pleaded under the antitrust laws of each State or jurisdiction identified below, on behalf of Plaintiffs and members of the Class.

129.   Although each individual count relies upon state law, the essential elements of each state antitrust claim are the same. The above-alleged conduct,

which violates the federal Sherman Antitrust Act, will establish a claim under each of the state laws cited below.

### Count II: Violation of Arkansas Code Annotated § 4-88-101, *et seq.*

130.    Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs of this Complaint as though fully set forth herein.

131.    Defendants have violated Arkansas Code Annotated, §4-88-101, et seq., through their unfair and/or deceptive practices.

132.    Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the Tires market, a substantial part of which occurred within Arkansas.

133.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Tires market, a substantial part of which occurred within Arkansas, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Tires market.

134.    Defendants engaged in the aforesaid conduct which is unconscionable, false, or deceptive. Defendants' acts affront the sense of justice, decency, and/or reasonableness and violate public policy.

135.    Due to Defendants' concerted actions, Plaintiffs and members of the Arkansas Class, have suffered actual injury to their businesses and properties and are threatened with further actual injury. Defendants' unlawful, unfair, and/or

deceptive trade and business practices were a direct and proximate cause of actual injury to Plaintiffs and members of the Indirect Purchaser Class.

136.    Defendants' conduct substantially affected commerce and consumers in Arkansas throughout the Class Period.

137.    In addition, Defendants have fraudulently concealed their actions from Plaintiffs and members of the Indirect Purchaser Class.

138.    Therefore, Plaintiffs and members of the Indirect Purchaser Class seek any and all relief, to the fullest extent allowable, under Arkansas Code Annotated, §4-88-101, *et seq.*, and as equity so requires.

## IX.    <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs, individually and on behalf of the proposed Class, respectfully ask the Court for a judgment that:

a.    Certifies the Class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) and directs that reasonable notice of this action, as provided by Fed. R. Civ. P. 23(c)(2), be given to the Class, and declares Plaintiffs as representatives of the Class;

b.    Appoints Plaintiffs and their attorneys as class representatives and class counsel, respectively;

c.    Enters judgment against Defendants, and in favor of Plaintiffs and the Class, holding Defendants liable for the antitrust violations alleged;

d.    Awards a declaratory judgment that Defendants restraint of trade was done for illegal, anticompetitive purposes, was an unreasonable restraint of trade, and had anticompetitive effects

on the U.S. market for Tires in violation of the Sherman Act, § 1.

e.     Grants permanent injunctive relief:

    i.     enjoining Defendants from engaging in future anticompetitive conduct; and

    ii.    requiring Defendants to take affirmative steps to dissipate the continuing effects of its prior unlawful conduct;

f.     Awards Plaintiffs and the Class actual, double, treble, and exemplary damages as permitted and as sustained by reason of the antitrust violations alleged herein, plus interest in accordance with law;

g.     Awards such equitable relief as is necessary to correct for the anticompetitive market effects caused by Defendants' unlawful conduct, including disgorgement, restitution, and the creation of a constructive trust;

h.     Awards Plaintiffs and the Class their costs of suit, including reasonable attorneys' fees as provided by law;

i.     Directs such further relief as it may deem just and proper.

## X.    <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury on all issues so triable.

Dated: May 2, 2024.                     Respectfully submitted,

                                        <u>/s/ Adam T. Schnatz</u>
                                        Adam T. Schnatz (P72049)
                                        CLARK HILL PLC
                                        500 Woodward Avenue, Suite 3500

Detroit, MI 48226
313-965-8287
aschnatz@clarkhill.com

Rex A. Sharp, MO #51205
Isaac L. Diel, MO #39503
W. Greg Wright, MO #49545
Brandon C. Landt, KS #28867
Hammons P. Hepner, KS #29138
SHARP LAW LLP
4820 W. 75th Street
Prairie Village, KS 66208
Tel.: (913) 901-0505
rsharp@midwest-law.com
idiel@midwest-law.com
gwright@midwest-law.com
blandt@midwest-law.com
hhepner@midwest-law.com

--and--

Warren T. Burns
Kyle Oxford
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, TX 75202
Tel.: (469) 904-4550
wburns@burnscharest.com
koxford@burnscharest.com

Korey A. Nelson
Amanda K. Klevorn
BURNS CHAREST LLP
365 Canal Street, Suite 1170 New
Orleans, Louisiana 70130
Tel: (504) 799-2845
knelson@burnscharest.com
aklevorn@burnscharest.com

Thomas P. Thrash

THRASH LAW FIRM, P.A.
1101 Garland Street
Little Rock, AR 72201
501-374-1058
tomthrash@thrashlawfirmpa.com

***Attorneys for Plaintiffs and Proposed
Class***